SPRINGEN, Respondent, v. AGER PLUMBING & HEATING, INC., and others, Appellants.

*March 5—April 2, 1963.*

For the appellants there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner*.

For the respondent there was a brief and oral argument by *Donald W. Kaatz* of Madison.

HALLOWS, J. The main question on this appeal is whether the verdict is excessive. The defendants argue the plaintiff's testimony as to his personal injuries is conflicting, false, and entitled to little credibility, and in any event the evidence does not sustain the amount of the award. The plaintiff contends the award is not excessive and included items of wage loss, impairment of earnings, permanency of injury, pain and suffering, and medical expenses. The omission of any itemization in a damage question makes it difficult on review to determine just what the jury considered in arriving at its award. Only the general result can be tested but this difficulty is inherent in all general verdicts. Our review must be based on the rule that when there is any credible evidence which under any reasonable view supports the jury finding, especially when the verdict has the approval of the trial court, it should not be disturbed. This is another way of saying the evidence must be viewed in the light most favorable to the verdict. *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 92 N. W. (2d) 884; *Carpenter v. Farmers Mut. Ins. Co.* (1959), 6 Wis. (2d) 259, 94 N. W. (2d) 652; *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. (2d) 549. An excessive verdict is one which reflects an allowance for the injury and its effects not sufficiently proved or reflects a rate of compensation which is beyond reason. *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 103 N. W. (2d) 907.

The defendant's truck struck the plaintiff's automobile from the rear while the plaintiff was about to make a left turn from Monona drive onto Nichols road in the village of Monona. The force was sufficient to move the plaintiff's

stopped automobile three to five feet. The impact threw the plaintiff and his daughter, a front-seat passenger, forward. The plaintiff jammed his knee against the dashboard, hit his stomach against the steering wheel and his right hand against the dashboard, and suffered a whiplash injury. The bumper, trunk, and a rear fender of the plaintiff's car were stove in and the tail pipe and muffler jammed up and forward.

The plaintiff suffered severe and sporadic headaches immediately following the accident and the next day consulted Dr. Olson, complaining of pains in the neck and upper back. The doctor concluded the plaintiff suffered a sprain in the neck or a strain of the involved muscles and suggested if there was no improvement within forty-eight hours the plaintiff should consult an orthopedic surgeon. Two days later plaintiff consulted Dr. Nordby and complained of soreness about the neck, the right hand, his back and abdomen, and headaches. On this examination, Dr. Nordby found a tenderness and increased tone in some of the neck muscles, a discomfort in the neck, a 10-degree limitation in tilting of the head to the right and tenderness in the fingers, in the stomach, and in the lower rib area. Dr. Nordby concluded the plaintiff had a cervical strain of the sternocleidomastoid muscle and a sprain in the neck. The plaintiff was given medication for pain and advised to use ice packs and heat and to perform certain exercises. Dr. Nordby was consulted approximately 12 times for examination and treatment before trial. On one examination he found a muscle spasm in the upper back and prescribed diathermy treatments. During this time the plaintiff had various symptoms which appeared and disappeared.

Three days before the trial, Dr. Nordby examined the plaintiff and concluded the residuals of limitation of motion and pain in the neck were due to deep scarring of certain cervical ligaments which had persisted and would be a

permanent condition. This evidence is credible and the jury could find a permanency of the plaintiff's injuries. There is testimony by the plaintiff's wife the plaintiff suffered considerable pain which is substantiated by some objective findings of Drs. Olson and Nordby of tenderness in the neck area and a muscle spasm. There is apparently no dispute over the medical expense for drugs, doctors, hospital, and therapy treatments totaling $351.94.

On the element of wage loss there was testimony the plaintiff incurred a net wage loss of $2,230.17, which the jury might reasonably infer was due to the accident. Plaintiff was a salesman and after the accident had difficulty in getting out of bed in the morning, was restless at night, and for some time after the accident his commissions from sales were less than they previously were. While the evidence of wage loss is not strong, it would sustain some amount as part of the award.

The evidence of impairment of earning capacity was based primarily on the inability of the plaintiff to work as a machine operator. From February 7, 1962, to about March 13, 1962, the plaintiff worked at Ohio Chemical Company at a pay rate of approximately $550 per month. His foreman testified and the jury could consider he was discharged from that job because of his back injury. From the evidence the jury could conclude because of the injuries the plaintiff received he would not be as desirable an employee as a machine-shop worker, at which he had had five years' previous experience.

We have recited only briefly the material testimony most favorable to the plaintiff. Admittedly it does not give a true picture of all the testimony. Much of the summarized testimony is contradicted or subject to contrary inferences. It is also true the plaintiff's testimony was conflicting and in some respects inconsistent but this argument of the defendants goes to credibility. In the first instance it is the function

of the jury to resolve the conflict in the testimony and determine the credibility of witnesses unless the testimony is so inherently contradictory and unbelievable that it can be said to be unworthy of belief as a matter of law. We cannot hold in this case the plaintiff's testimony as a matter of law was incredible. We have not overlooked such part of the plaintiff's testimony as concerns the collection of $500 for a claimed injury and damage to the car in a subsequent accident. Upon the defendants' version of the plaintiff's injuries, the verdict would be excessive, but the question is not what the jury could find but whether it was justified in finding what it did.

We consider the award of $7,900 as being high and in the nebulous border dividing the range within which the jury award will not be set aside and the area of excessiveness. In such a doubtful case the appellate court should rely on the judgment of the trial court. *Wiley v. Fidelity & Casualty Co.* (1958), 3 Wis. (2d) 320, 88 N. W. (2d) 366; *Hale v. Schultz* (1936), 223 Wis. 285, 270 N. W. 46. While we would have been better satisfied if the trial court had found the verdict excessive, in this case we must accord weight to the trial court's opinion and sustain the verdict. We might say if the trial court had reduced the verdict somewhat we would not have found he had abused his discretion.

The argument is made this verdict is excessive in view of *Albers v. Herman Mut. Ins. Co.* (1962), 17 Wis. (2d) 385, 117 N. W. (2d) 364, and *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 117 N. W. (2d) 660, both involving pain and suffering from whiplash injuries. A comparison of the facts of apparently similar injuries can only be made in a very general way. It is true in *Albers* this court reduced a $10,000 verdict as excessive although the award had been sustained by the trial court. The option given to the plaintiff in that case was of accepting $6,000. In fixing an option under *Powers*

*v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, this court does not necessarily fix the highest amount or the lowest amount a jury could within reason award. We determine a reasonable amount within a range we believe to be reasonable. Because of the nature of pain and suffering, it is difficult at best to translate it into money damages. We stated in *Affett v. Milwaukee & S. T. Corp.* (1960), 11 Wis. (2d) 604, 106 N. W. (2d) 274, pain and suffering could not be reduced to a dollar amount per unit of time. Likewise, a comparison with other verdicts at best can only be an imperfect analogy affording some guidelines to the solution but not necessarily determining the result.

The defendants contend the trial court erred in giving an instruction on compensation for future medical treatment although there was no evidence such treatment would be required and in instructing the jury "you should allow" plaintiff reasonable compensation for any loss of earnings he sustained because of the accident. These instructions were not objected to until motions after verdict and then only as a basis for a new trial in the interests of justice. While the trial court may have been in error in giving these parts of the instructions, we do not find they were prejudicial under the circumstances or sufficient to grant a new trial in the interests of justice.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.