KOELE, and wife, Appellants, v. RADUE, as Personal Representative of Estate of Elsa A. Radue, Deceased, and others, Respondents.

No. 75-444. Submitted on briefs November 2, 1977.— Decided January 3, 1978.
(Also reported in 260 N.W.2d 766.)

584

For the appellants the cause was submitted on the briefs of *Robert I. Perina, Robert D. Hoyt,* and *Perina & Hoyt* of Madison.

For the respondents Herman C. Radue and Employers Mutual Liability Insurance Company of Wisconsin, the cause was submitted on the brief of *R. Rouse* and *Jones, Larson, Charnholm, Anderson & Rouse* of Wausau.

There was a joint brief by *Leon S. Schmidt,* and *Schmidt, Thibodeau & Schmidt* of Wisconsin Rapids, for Raymond Oestreich and State Farm Mutual Insurance Company; by *John W. Kelley,* and *Kelley, Weber & Bolte* of Wausau, for Herman C. Radue and Employers Mutual Liability Insurance Company of Wisconsin; and by *Arthur L. Eberlein* of Wausau, for Raymond Oestreich.

ROBERT W. HANSEN, J. The sole issue on this appeal is whether the trial court acted properly in setting

aside the jury's award of damages and granting a new trial unless the plaintiffs elected to take judgment on the reduced amounts set by the trial court.

Where in response to motions after verdict a trial court fully reviews the evidence as to damages and concludes that the award is or is not excessive, the sole question on appellate review is whether this determination was an abuse of discretion.[1] On review this court must, like the trial court, view the evidence in the light most favorable to the plaintiff.[2] Where the trial court's analysis of the evidence upon which it approves or rejects a jury's damage award is complete, the reviewing court need not review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict is excessive.[3] Instead, this court will review the evidence only to the extent necessary to determine whether the trial court abused its discretion.[4]

In applying this abuse of discretion test to a finding of excessive damages, each case must be considered on its own facts and record.[5] In the case before us, it appears from the record that the plaintiff was fifty-five years

[1] *Karl v. Employers Ins. of Wausau*, 78 Wis. 2d 284, 304, 254 N.W.2d 255 (1977).

[2] *Kobelinski v. Milwaukee & S. Transport Corp.*, 56 Wis.2d 504, 525, 202 N.W.2d 415 (1972), citing *Bash v. Employers Mut. Liability Ins. Co.*, 38 Wis.2d 440, 157 N.W.2d 634 (1968); *Baumgarten v. Jones*, 26 Wis.2d 703, 133 N.W.2d 346 (1965).

[3] *Id.* at 525, citing *Young v. Anaconda American Brass Co.*, 43 Wis.2d 36, 168 N.W.2d 112 (1969); *Burke v. Poeschl Brothers, Inc.*, 38 Wis.2d 225, 156 N.W.2d 378 (1968).

[4] *Id.* at 525, citing *Murawski v. Brown*, 51 Wis.2d 306, 187 N.W.2d 194 (1971); *Makowski v. Ehlenbach*, 11 Wis.2d 38, 103 N.W.2d 907 (1960). *See also: Karl v. Employers Ins. of Wausau, supra*, n. 1, at 304, 305.

[5] *Id.* at 525, citing *Springen v. Ager Plumbing & Heating, Inc.*, 19 Wis.2d 487, 493, 120 N.W.2d 692 (1963).

old when the accident occurred and sustained the following injuries: comminuted fracture of the tibula and fibula of the right leg, lacerations on the face and hand, abrasions of the left leg, contusions to the upper body, broken ribs, internal bleeding in the abdomen and bruises and injury to the back and neck. For these injuries, the jury awarded damage as follows:

$100,000 past and future injuries
4,000 future medical expenses
17,200 past wage loss
88,000 future wage loss
30,000 loss of consortium

In addition, the court determined an award of $7,900.36 for past medical expenses, making the total award for damages $247,100.36.

The trial court filed a memorandum opinion which thoroughly analyzed and evaluated the evidence as to damages and pointed out in which respects that evidence did not support the jury verdict. No abuse of discretion has been demonstrated on this appeal. The trial court's conclusion that the damages awarded were excessive and shocked the conscience of the court is upheld.

When the trial court set aside the damage awards it offered the plaintiffs the *Powers* option of taking judgment in a reduced amount.[6] The second shell fired in the

---

[6] *Powers v. Allstate Ins. Co.*, 10 Wis.2d 78, 102 N.W.2d 393 (1960). In *Powers*, this court adopted the rule followed in other states and in the federal courts that: ". . . where an excessive verdict is not due to perversity or prejudice, and is not the result of error occurring during the course of trial, the plaintiff should be granted the option of remitting the excess over and above such sum as the court shall determine is the reasonable amount of plaintiff's damages, or of having a new trial on the issue of damages." *Id.* at 91, 92. The option procedure has been codified in sec. 805.15(6), Stats. 1975.

plaintiffs' double-barreled challenge to the trial court's order is aimed at the figures set by the trial court as reasonable awards. These amounts will be upheld unless they represent an abuse of discretion.[7] As our court has held: "If there is a reasonable basis for the trial court's determination as to the proper amount, it will be sustained."[8] It follows that: "[I]t is only in an unusual case that we will disturb the amount which the trial court has fixed as reasonable for the purpose of granting the plaintiff an option to accept judgment in that amount in lieu of a new trial on damages."[9] Where an award as reduced by the trial court is within the range of a reasonably debatable amount, there is no abuse of discretion[10] and the order of the trial court reducing the jury award in the amount that it did will be affirmed.[11]

■

If there would be precedential value in our setting forth a detailed analysis of the evidence in this record as to each element of damage, as the trial court did in finding the damage awards excessive and reducing them, we would do just that. However, our court has made clear that ". . . great care must be exercised in considering other cases with comparable injuries,"[12] and has held that ". . . each case must be considered on its own facts and record. . . ."[13] With these rules in mind, we limit our opinion to the statement that, after a review of the record we conclude there was here no abuse of dis-

---

[7] *Lutz v. Shelby Mut. Ins. Co.*, 70 Wis.2d 743, 759, 235 N.W.2d 426 (1975). *See also: Kobelinski v. Milwaukee & S. Transport Corp.*, *supra*, n. 2, at 525.

[8] *Id.* at 759, citing *Moritz v. Allied American Mut. Fire Ins. Co.*, 27 Wis.2d 13, 133 N.W.2d 235 (1965).

[9] *Boodry v. Byrne*, 22 Wis.2d 585, 595, 126 N.W.2d 503 (1964).

[10] *Kobelinski v. Milwaukee & S. Transport Corp.*, *supra*, n. 2, at 525, citing *Makowski v. Ehlenbach*, *supra*, n. 4.

[11] *Id.* at 525, 526.

[12] *Id.* at 525.

[13] *Id.* at 525.

cretion in either the finding of excessiveness or the amounts to which the trial court reduced the jury awards. The trial court reduced: (1) The award for past and future injuries from $100,000 to $40,000; (2) the award for future medical expenses from $4,000 to $3,000; (3) the award for future wage loss from $88,000 to $10,000; and (4) the award to Mrs. Koele for loss of consortium from $30,000 to $2,000. We conclude that the reduced awards are within a reasonable range.

There remains the contention of the plaintiffs that the trial court erred in not permitting the plaintiffs' economic expert to testify to the method of calculating future wage loss. At trial the plaintiffs' counsel conceded that such expert testimony was based on the assumption that John Koele was permanently and totally disabled and would never work again. In finding the jury award of $88,000 for future wage loss to be excessive, the trial court analyzed in detail the expert medical testimony offered by the plaintiffs to prove the permanency of John Koele's disabilities. One doctor testified that, in his opinion to a reasonable medical certainty, the chances were good that a future osteotomy operation would substantially alleviate John Koele's pain and disability. The other medical expert testified ". . . how much he will improve [from future surgery] I honestly don't know." An award for loss of earning capacity must be supported by expert testimony.[14] A jury may not infer a permanent loss of earning capacity from evidence of permanent injury in the absence of some additional evidence to support such loss.[15] Although the record does sustain a finding of some permanent disability and some loss of future earning capacity, the

[14] *Ostreng v. Lowrey,* 37 Wis.2d 556, 155 N.W.2d 558 (1968).
[15] *Sampson v. Laskin,* 66 Wis.2d 318, 334, 224 N.W.2d 594 (1975), citing *Wells v. National Indemnity Co.,* 41 Wis.2d 1, 11, 162 N.W.2d 562 (1968).

record does not sustain a finding of total disability and total loss of earning capacity. The jury's award of $88,-000 approximates the wage loss, reduced to present value, which would occur if John Koele never works again. It follows that the proffered testimony of the economic expert that was based on the assumption of permanent and total loss of earning capacity would here have been within the realm of mere possibility or conjecture,[16] and was properly rejected by the trial court.

*By the Court.*—Order affirmed.

---

[16] *Drexler v. All American Life & Casualty Co.*, 72 Wis.2d 420, 432, 241 N.W.2d 401 (1976).